**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO. 4:07-CV-00071-M**

**DAVID HOUCHIN and**
**ANGELA HOUCHIN** **PLAINTIFFS**

**vs.**

**ALLSTATE INDEMNITY INSURANCE COMPANY** **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon a motion by the Defendant, Allstate Indemnity Insurance Company, for summary judgment in its favor on Plaintiff's remaining claims and on all Defendant's counterclaims [DN 65]. Plaintiff, David Houchin, *pro se*, responded [DN 68]. Plaintiff, Angela Houchin, *pro se*, did not respond. Fully briefed, this matter is ripe for decision.

## I. BACKGROUND

The Defendant issued a homeowner's policy of insurance (the "Policy") to the Plaintiffs which insured their home located at 1295 Meredith Ridge Road in Leitchfield, Kentucky. The Policy was in place and in force at all times relevant to this lawsuit. On or about July 25, 2006, a fire occurred at the Plaintiffs' home which either damaged or destroyed the dwelling and its contents. In accordance with the terms of the Policy, the Plaintiffs timely filed a claim with the Defendant by providing notice of the fire and the damage. The Defendant refused to pay a portion of the claim on grounds that the Plaintiffs were complicit in causing the fire. It is undisputed that both of the Plaintiffs were subsequently convicted in Kentucky state court of second-degree arson, second degree wanton endangerment, and insurance fraud in relation to the destruction of their home. These convictions were affirmed on appeal.

The Plaintiffs filed this lawsuit[1] seeking coverage under the terms of the Policy and alleging that the Defendant engaged in bad faith when it denied their insurance claim. Defendant filed a counterclaim against Plaintiffs alleging that the fire was intentionally caused or brought about by Plaintiffs. As a result, Defendant maintains that it is not liable under the Policy and seeks reimbursement for the Additional Living Expenses paid to Plaintiffs in the amount of $13,236.40, for reimbursement of the advanced Content Loss payment in the amount of $1,000, and for subrogation/indemnification for payment to Plaintiffs' mortgage company, Option One Mortgage Company ("Option One"), in the amount of $102,763.36. Additionally, Defendant amended its counterclaim to add a claim for reverse bad faith. By Memorandum Opinion and Order filed September 22, 2008, the Court granted partial summary judgment in favor of Defendant as to the Plaintiffs' claims of bad faith. The Defendant now moves for summary judgment on the remaining coverage claims between Plaintiffs and Defendant, as well as on Defendant's counterclaims for monetary damages and reverse bad faith.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a

---

[1] The Plaintiffs filed this suit in Kentucky state court which was subsequently removed to this Court by the Defendant on diversity of citizenship jurisdictional grounds. See 28 U.S.C. §§ 1332 and 1441.

genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The rule requires the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

### A. Plaintiffs' Claims for Coverage

Plaintiffs seek payment from Defendant under the Policy in the stated amount of $185,197.73. (Counterclaim ¶ 4; Plaintiffs' Proof of Loss.) Defendant moves for summary judgment on Plaintiffs' claims for payment under the Policy. Defendant maintains that the fire at the Plaintiffs' residence was intentionally caused and brought about by Plaintiffs or someone acting on their behalf for the purpose of defrauding Defendant. As a result, Defendant argues that it has no liability to Plaintiffs pursuant to the Intentional or Criminal Acts Exclusion contained in the Policy.

The Policy excludes coverage where a loss is caused by the insured's own intentional or criminal acts. Specifically, the Policy provides in relevant part:

> **Losses We Do Not Cover Under Coverages A and B:**
> **We** do not cover loss to the property described in **Coverage A – Dwelling**

> **Protection or Coverage B – Other Structures Protection** consisting of or caused by: . . .
>
> 9. Intentional or criminal acts of or at the direction of any **insured person** if the loss that occurs:
>    a) may be reasonably expected to result from such acts; or
>    b) is the intended result of such acts.
>
> This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

(Insurance Policy at 6.) Therefore, the question before the Court is whether Plaintiffs' claims for coverage under the Policy are barred due to this exclusion in light of Plaintiffs' criminal convictions related to the fire.

Under Kentucky law, the doctrine of issue preclusion, also known as collateral estoppel, acts to bar the re-litigation of an issue that has previously been fully litigated. Issue preclusion requires four elements: (1) that the issues raised in the second case were the same issues litigated in the first case; (2) that the issues were actually litigated; (3) that they were actually decided; and (4) that they were necessary to the court's judgment. Coomer v. CSX Transp. Inc., 319 S.W.3d 366, 374 (Ky. 2010). Furthermore, "a criminal conviction can be used for purposes of collateral estoppel in a later civil action." Roberts v. Wilcox, 805 S.W.2d 152, 153 (Ky. Ct. App.1991)(citing May v. Oldfield, 698 F. Supp. 124 (E.D. Ky. 1988)); Gossage v. Roberts, 904 S.W.2d 246, 248 (Ky. Ct. App. 1995).

The Plaintiffs do not dispute that they were both convicted of arson, reckless endangerment, and insurance fraud related to the fire in question. Nor do Plaintiffs dispute that their convictions were affirmed on appeal. See David Houchin v. Com., 2009 WL 4251645 (Ky. Nov. 25, 2009); Angela Houchin v. Com., 2009 WL 4060205 (Ky. Ct. App. Nov. 25, 2009), review denied (Nov. 10, 2010). Thus, pursuant to the doctrine of issue preclusion, the issue of whether Plaintiffs engaged in intentional or criminal acts that resulted in the loss in question was actually litigated and decided

in the state court criminal action and was necessary to the disposition of the case. Although Plaintiff David Houchin argues in response to the motion for summary judgment that he is preparing to file a Ky. R. Crim. P. 11.42, the pendency of an appeal does not destroy the finality of the judgment for the purposes of issue preclusion under Kentucky or Sixth Circuit law. See Roberts, 805 S.W.2d at 153; Stemler v. City of Florence, 126 F.3d 856, 871 (6th Cir. 1997). Thus, Plaintiffs are now precluded from relitigating their criminal conviction for arson and insurance fraud related to the fire in question, and the Court is bound by the state court's determination. See Gossage, 904 S.W.2d at 248 (Ky. Ct. App.1995); Murphy v. Modrall, 2006 WL 2328588, *2 (Ky. Ct. App. 2006); Stemler, 126 F.3d at 871.

For these reasons, because Plaintiffs were convicted of arson and insurance fraud associated with underlying insurance claim and because the Policy excludes coverage where a loss is caused by the insured's own intentional or criminal acts, the Court finds that the Defendant's decision to deny coverage was proper and summary judgment in favor of Defendant on Plaintiffs' coverage claim is warranted.

**B. Counterclaims**

**1. Reimbursement of Payments to Plaintiffs' Mortgagee**

Under the terms of the Policy, Defendant Allstate was obligated to pay, and did pay, the mortgagee, Option One, the sum of $102,763.36, representing the interest the mortgagee had in the property. Specifically, the Policy provides "[a] covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent their interest and in the order of precedence." (Defendant's Motion for Summary Judgment at 11; Policy at ¶ 18.) According to the Policy, the Defendant would "protect the mortgagee's interest in a covered building structure in the event of

an increase in hazard, intentional or criminal acts of . . . an insured person." (Id.) In exchange for these obligations, the Policy provides that the mortgagee will "give [Allstate] the mortgagee's right of recovery against any party liable for loss." (Id.)

Thus, pursuant to the Policy's standard mortgage clause, Option One Mortgage Company, as the named mortgagee, was entitled to recover under the policy even if Plaintiffs could not. Allstate paid Option One the amount of $102,763.36 to pay off its lienholder interest in Plaintiffs' residence. Option One consequently assigned to Allstate all of its rights against Plaintiffs. See, e.g., Allstate Ins. Co. v. Heldreth, 2003 WL 22871679, *2 (N.D. W. Va. May 22, 2003); Allstate Ins. Co. v. LaRandeau, 622 N.W.2d 646, 649 (Neb. 2001)("'Courts have generally allowed an insurer to subrogate against an insured arsonist responsible for causing the loss.'" Id. at 650 (quoting 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 224:11 at 224-27(2000)). In the present case, Plaintiffs do not dispute that Defendant obtained an assignment of Option One's rights under the terms of the Policy or Promissory Note[2] and that Plaintiffs were convicted of arson of the residence in question. Accordingly, recognition of Allstate's subrogation claim against Plaintiffs for the amounts which Allstate paid to Option One "serves the legitimate purpose of placing ultimate responsibility for the loss upon the intentional wrongdoer." Allstate Ins. Co., 622 N.W.2d at 651. For these reasons, the Court grants summary judgment in favor of Defendant in the amount of $102,763.36 against the Plaintiffs, including prejudgment interest at 8% per annum.

**2. Reimbursement for Additional Living Expenses and Advanced Content Loss**

Having determined that Plaintiffs were convicted of arson and insurance fraud associated with the underlying insurance claim and because the Policy excludes coverage where a loss is caused

[2]The Promissory Note is not part of the record.

by the insured's own intentional or criminal acts, the Court concludes that the Plaintiffs were not entitled to payments under the Policy for Additional Living Expenses in the amount of $13,236.40 and advanced Content Loss payments in the amount of $1,000. For these reasons, the Court grants summary judgment in favor of Defendant in the amount of $14,236.40, including prejudgment interest at 8% per annum.

**3. Damages for Investigation and Other Expenses**

Defendant moves for summary judgment on its claim for reimbursement for its investigation expenses, litigation expenses, attorneys' fees, and costs pursuant to KRS § 304.47-020. KRS § 304.47-020 provides in relevant part that:

> Any person damaged as a result of a violation of any provision of this section when there has been a criminal adjudication of guilt shall have a cause of action to recover compensatory damages, plus all reasonable investigation and litigation expenses, including attorneys' fees, at the trial and appellate courts.

KRS § 304.47-020(3). See also Gibson v. Kentucky Farm Bureau Mut. Ins. Co., 328 S.W.3d 195, 205 (Ky. Ct. App. 2010). Plaintiffs were indicted and were subsequently convicted of Fraudulent Insurance Acts with an Aggregate Value in Excess of $300.00 in violation of KRS § 304.47-020(2)(b). Therefore, there has been a "criminal adjudication of guilt." See, e.g., Grange Mut. Cas. Co. v. Kerr, 2009 WL 1542702, *3 (W.D. Ky. June 2, 2009). Accordingly, the Court will award Defendant compensatory damages, attorneys' fees, and all other reasonable expenses incurred during the investigation and litigation of the instant action.

**4. Reverse Bad Faith**

Defendant argues that the Court should recognize the cause of action of reverse bad faith in the insurance context and award Defendant damages associated with Plaintiffs' fraudulent claim. Defendants maintain that there is a strong public policy against allowing insureds to profit from their

own wrongdoing while simultaneously subjecting insurers to inordinate increased costs for investigation, defense, and litigation. (Defendant's Motion for Summary Judgment at 15 (citing Cathryn M. Little *Fighting Fire With Fire: "Reverse Bad Faith" In First-Party Litigation Involving Arson and Insurance Fraud* 19 Campbell L. Rev. 43, 44 (1996)).

Plaintiffs cite no Kentucky case that has adopted the claim by an insurer for reverse bad faith against an insured. In fact, the Court is not aware of any jurisdiction that has recognized a cause of action for reverse bad faith. See In re Tutu Water Wells Contamination Litig., 78 F. Supp. 2d 436, 453 (D. V. I. 1999); see also Tokles & Son, Inc. v. Midwestern Indem. Co., 605 N.E.2d 936 (1992); First Bank of Turley v. Fidelity and Deposition Insurance Company of Maryland, 928 P.2d 298 (Okla. 1996); Johnson v. Farm Bureau Mut. Ins. Co., 533 N.W.2d 203 (Iowa 1995). The Court likewise declines to do so. Accordingly, Defendant's claim for reverse bad faith is dismissed.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Defendant, Allstate Indemnity Insurance Company, for summary judgment [DN 65] is **GRANTED IN PART**. Defendant's counterclaim for reverse bad faith is dismissed. The Court finds in favor of Defendant on all remaining claims and counterclaims.

**IT IS FURTHER ORDERED** that Defendant shall file within 30 days from the date of entry of this Order documentation in support of its claim for investigation and litigation expenses, costs, and attorneys' fees along with a proposed final judgment incorporating said amounts. Response and reply times shall be governed by local rule.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 25, 2012

cc: counsel of record
David Houchin, *pro se*
Angela Houchin, *pro se*